IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DEBORAH ANNE LOLLAR, § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:20-CV-3298-BH |
| § | |
| KILOLO KIJAKAZI, § | |
| ACTING COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| Defendant. § | Consent Case[1] |

## MEMORANDUM OPINION AND ORDER

Deborah Anne Lollar (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner)[2] denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act. (*See* docs. 1; 23.) Based on the relevant filings, evidence, and applicable law, the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for reconsideration.

### I. BACKGROUND

On June 5, 2018, Plaintiff filed her application for DIB, alleging disability beginning December 1, 2014. (doc. 20-1 at 70.)[3] Her claim was denied initially on August 21, 2018 (*Id.*), and upon reconsideration on November 30, 2018 (*id.* at 83). On January 8, 2019, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (*Id.* at 96.) She appeared and testified at a

---

[1]By consent of the parties and order filed July 20, 2021 (doc. 22), this matter has been transferred for the conduct of all further proceedings and the entry of judgment.

[2]At the time this appeal was filed, Andrew Saul was the Commissioner of the Social Security Administration, but Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, so she is automatically substituted as a party under Fed. R. Civ. P. 25(d).

[3]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

hearing on December 11, 2019. (*Id.* at 36.) On February 27, 2020, the ALJ issued a decision finding her not disabled. (*Id.* at 11.)

Plaintiff timely appealed the ALJ's decision to the Appeals Council on April 27, 2020. (*Id.* at 153.) The Appeals Council denied her request for review on September 3, 2020, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 5.) She timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (*See* doc. 1.)

### A.     Age, Education, and Work Experience

Plaintiff was born on March 3, 1977, and was 42 years old at the time of the hearing. (doc. 20-1 at 154.) She had completed two years of college, could communicate in English, and had past relevant work as a customer service clerk and a copy clerk. (*Id.* at 57, 170, 172.)

### B.     Medical Evidence[4]

Between 2012 and 2019, Plaintiff received medical treatment from different medical professionals at Healthcare Associates of Irving for multiple conditions, including migraine headaches, fibromyalgia, arthralgias, obesity, bipolar disorder, depression, abdominal pain, pelvic pain, low back pain, hand pain, cervicocranial syndrome, muscle contracture, myositis, and sleep apnea. (*Id.* at 461-645, 876-978, 993-1169.)

Rheumatologist Renuka Basavaraju, M.D., had treated Plaintiff for joint and muscle pain since March 2012. (*Id.* at 571-91, 876-88, 1076-84, 1087-1133.) Noting a history of fibromyalgia flare-ups and sacroiliac joint dysfunction, she found fibromyalgia and arthralgias in multiple sites, chronic fatigue, and depression. (*Id.*) Plaintiff reported morning joint stiffness, fatigue, joint pain, and migraine headaches, but her physical examinations were generally unremarkable. (*Id.*)

---

[4]Because only Plaintiff's physical impairments are at issue, psychological and psychiatric medical evidence is noted only when it includes information relevant to the physical impairments.

In February and June of 2014, Dr. Basavaraju noted tenderness in the interphalangeal joints of both hands with bilateral shoulder tenderness and multiple tender points suggestive of fibromyalgia. (*Id.* at 1128, 1133.) Throughout treatment, Plaintiff had been prescribed different medications for pain including Hydrocodone, Tramadol, Cymbalta, Lyrica, and gabapentin. (*Id.* at 459, 1067, 1090, 1092, 1103, 1110-11, 1120.) Imaging of the cervical and lumbar spine on October 9, 2017, showed straightening of the normal lordotic curve and a small degenerative anterior spur at L4, but was otherwise unremarkable. (*Id.* at 890-91.)

On May 7, 2018, Dr. Basavaraju completed an arthritis residual functional capacity questionnaire for Plaintiff. (*Id.* at 988-91.) She noted that Plaintiff had a number of symptoms, including chronic pain, fatigue, joint pain and swelling, and difficulty concentrating. (*Id.* at 988.) She opined that Plaintiff could sit for two to four hours and stand for about two hours of an eight-hour workday, but needed to be able to walk for five minutes every 30 to 45 minutes, shift positions, and take unscheduled breaks four to six times a day lasting 10 to 30 minutes, depending on pain level. (*Id.* at 989-90.) Dr. Basavaraju also opined that she could lift and carry no more than 20 pounds occasionally and less than 10 pounds frequently; never climb ladders; rarely twist, stoop, or crouch; and use hands, fingers, and arms only 25 percent of the time; and was likely to be absent more than four days per month as a result of her impairments or treatment. (*Id.* at 990-91.)

On August 21, 2018, Laurence Ligon, M.D., a state agency medical consultant (SAMC), conducted a medical evaluation based on the medical evidence. (*Id.* at 65-66.) He noted that the medical records showed Plaintiff with a history of fibromyalgia, anthralgia, and headaches since 2014, but opined that there was insufficient evidence to make a medical assessment prior to the date last insured of March 31, 2018. (*Id.* at 66.)

3

On November 28, 2018, Dorothy Leong, M.D., another SAMC, reviewed the medical evidence on reconsideration and completed a physical residual functional capacity (RFC) assessment. (*Id.* at 76-81.) She opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and push and/or pull without limitations, other than shown for lift and/or carry, with no postural, manipulative, visual, communicative, or environmental limitations. (*Id.* at 79-80.) Dr. Leong also opined that Plaintiff's fibromyalgia was a non-severe medically determinable impairment. (*Id.* at 77.)

**C.   Hearing**

On December 11, 2019, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ. (*Id.* at 38.) She was represented by an attorney. (*Id.*)

   *1.   Plaintiff's Testimony*

Plaintiff testified that her fibromyalgia caused widespread pain, making movement difficult. (*Id.* at 41.) It made her very clumsy, as she would trip and drop things several times a day, and it affected her ability to sleep, leading to "brain fog" and difficulty with concentration and memory. (*Id.*) Over the last five years, she had three "good days" and five "bad days" a month. (*Id.* at 42-43.) On her good days, she could drive her children to and from school, run errands, and do some household work, but she would still need to lie down for two to four hours. (*Id.* at 42-43.) On her bad days, she would not get out of bed and would have to take more medication for migraines, which made her "even sleepier." (*Id.* at 43.) Her medications helped dull her pain, but the pain level remained at "between a four and a six everyday." (*Id.* at 44.) Plaintiff had issues with carpal tunnel and neuropathy, with the numbness and tingling affecting her ability to type. (*Id.* at 45.) She

4

experienced weekly migraines that would last for several days. (*Id.* at 46.) She could unload and carry half a load of groceries on a good day, but she would be worn out if she tried to carry a gallon of milk across the room on a bad day. (*Id.* at 49-50.)

    2.    *VE's Testimony*

The VE testified that Plaintiff had previous work experience as a customer service clerk, which was semi-skilled sedentary work with a Specific Vocational Preparation (SVP) score of 4, and as a copy clerk, which was unskilled light work with an SVP of 2. (*Id.* at 57.) A hypothetical person with the same age, education, and work experience history as Plaintiff, who was limited to sedentary work and could lift and carry ten pounds occasionally and less than ten pounds frequently, stand/walk for two hours and sit for six hours in an eight-hour workday with normal breaks and rest periods, and had no additional limitations for pushing or pulling operation of hand and foot controls, but could not climb ladders, ropes, or scaffolds or be exposed to hazardous moving machinery and unprotected heights, would be able to sustain her prior work as a customer service clerk but not as a copy clerk. (*Id.* at 58.) If the hypothetical person could only work six hours a day or was anticipated to miss four days a month on a regular routine and ongoing basis, she would not be able to maintain competitive employment. (*Id.* at 59.) A person would not be able to maintain employment if she would need four to six breaks, each lasting 10 to 30 minutes, outside of already established breaks. (*Id.* at 60.)

D.    **ALJ's Findings**

The ALJ issued a decision denying benefits on February 27, 2020. (*Id.* at 14-23.) At step one, he found that Plaintiff had met the insured status requirements through March 31, 2018, and had not engaged in substantial gainful activity since the alleged onset date of December 1, 2014. (*Id.* at 16.)

5

At step two, the ALJ found that she had the following severe impairments: fibromyalgia, arthralgia obesity, and migraine headaches. (*Id.*) Despite those impairments, at step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the social security regulations. (*Id.* at 18.)

Next, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following limitations: lift and carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk two hours of an eight-hour workday; sit for six of an eight-hour workday; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; and must avoid exposure to hazardous moving machinery and unprotected heights. (*Id.* at 19.) At step four, the ALJ determined that Plaintiff was unable to perform her past work as a user support analyst. (*Id.* at 22.) At step five, the ALJ considered Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines and found there were other jobs that existed in significant numbers in the national economy that she could perform. (*Id.* at 22-23.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from December 1, 2014, the alleged onset date, through March 31, 2018. (*Id.* at 23.)

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a

reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* The court may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. ISSUE FOR REVIEW

Plaintiff presents one issue for review:

> When a claimant suffers from nonexertional limitations, the Grid Rules may be used as a framework only if the nonexertional limitations have no meaningful impact on the unskilled occupational base. In this case, the ALJ cited the Social Security Rulings as evidence that Plaintiff's non-exertional limitations had little to no effect on the occupational base and thereby denied benefits based on Grid Rule 201.28. Did Commissioner satisfy her shifting burden of proof when the ALJ declined to elicit VE testimony about the effects of Plaintiff's nonexertional limitations, and the Social Security Rulings do not address the combined effect of all the nonexertional limitations contained in the ALJ's RFC finding?

(doc. 23 at 6.)

### A.     **Medical-Vocational Guidelines**

Plaintiff argues that the ALJ impermissibly applied the Medical-Vocational Guidelines (Grids) to deny benefits despite acknowledging several nonexertional impairments. (doc. 23 at 11.)

According to the Code of Federal Regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). It is the Commissioner's burden at step five to show that a claimant is capable of performing other gainful employment in the national economy. 20 C.F.R. § 404.1520(a)(4)(i); *Greenspan*, 38 F.3d at 236. Once the Commissioner finds that jobs in the national economy are available to a claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing *Fraga*, 810 F.2d at 1302).

To establish that work exists for a claimant in significant numbers, an ALJ relies on the testimony of a VE in response to hypothetical questions[5] or other similar evidence, or on the Medical-Vocational Guidelines promulgated to guide this determination, often referred to as "the

---

[5] "The ALJ relies on VE testimony in response to a hypothetical question because the VE 'is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Benton ex rel. Benton v. Astrue*, 3:12-CV-874-D, 2012 WL 5451819, at *7 (N.D. Tex. Nov. 8, 2012) (quoting *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000)).

Grids".[6] *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); 20 C.F.R. Pt. 404, Subpt. P, App. 2. An ALJ may rely exclusively on the Grids if the impairments are solely exertional,[7] or if the nonexertional impairments do not sufficiently or significantly affect the RFC, to determine whether there is other work available that the claimant can perform. *Newton*, 209 F.3d at 458; *see also Fraga*, 810 F.2d at 1304 ("When the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and the claimant either suffers only from exertional impairments or his non-exertional impairments do not *significantly* affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform.") (citations omitted) (emphasis added). If the claimant suffers from nonexertional impairments, or a combination of exertional and nonexertional impairments, then the ALJ must rely on the testimony of a VE or "other similar evidence" to establish that jobs that the claimant can perform exist in the economy. *Lawler v. Heckler,* 761 F.2d 195, 198 (5th Cir. 1985). The Grids explicitly state that they "do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional impairments." 20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00(e)(1); *see also White v. Astrue*, 239 F. App'x 71, 73-74 (5th Cir. 2007) ("An ALJ's finding of a severe non-exertional impairment at step two precludes the ALJ from

---

[6]The Grids are divided into age categories, and the determination of whether an individual is presumptively disabled differs depending upon the age category and other factors. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[7]Under the Social Security regulations, impairments are either exertional or nonexertional. Impairments are classified as exertional if they affect the claimant's ability to meet the strength demands of jobs. The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. All other impairments are classified as nonexertional. *See Holiday v. Barnhart*, 460 F. Supp.2d 790, 806 (S.D. Tex. 2006) (citing *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) and 20 C.F.R. § 404.1569(a)); *see also* Social Security Ruling 96-9P (1996), 1996 WL 374185, at *5 ("[A] nonexertional limitation is an *impairment-caused* limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Environmental restrictions are also considered to be nonexertional.") (emphasis original).

relying solely on the Grid Rules at step five.").

Even when the claimant is so affected by a nonexertional impairment as to preclude resort to the Grids, however, they "may nevertheless be consulted as a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Moore v. Social Sec. Admin.*, 153 F. App'x 945, 947 (5th Cir. 2005) (per curiam) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00(e)(2)). The agency's regulation and rulings state that when using the Grids as a framework for a claimant who has a combination of exertional and nonexertional limitations, and the exertional limitations direct a finding of "disabled," "there is no need to consider the additional effects of a nonexertional impairment." Social Security Ruling (SSR) 83-14, 1983 WL 31254 at *3; 20 C.F.R. Pt. 404, Subpt. P., App. 2, 200.00(e)(2). "If the applicable rule directs a finding that plaintiff is not disabled, the Commissioner [must] consider nonexertional limitations and utilize the testimony of a vocational expert." *Rodriguez v. Barnhart*, No. CIV. SA-05-CA-1203-FB, 2006 WL 3779777, at *2 (W.D. Tex. Nov. 6, 2006); *accord Gonzalez v. Astrue*, No. M-09-210, 2013 WL 1345298, at *9 n.14 (S.D. Tex. Mar. 29, 2013) (observing that courts and legal scholars have noted that "[h]ow, exactly, the grids provide ... a framework is unclear ... [but] one thing is clear: Where the claimant's characteristics do not coincide exactly with a Grid Rule, the ALJ should introduce expert vocational testimony to further assist him in his Grids framework guided analysis.") (citations and internal quotations omitted). In all decisions, "[t]here must be findings of fact and recitation of the evidence which supports each finding." SSR 83-14, 1983 WL 31254, at *6.

Here, the ALJ found at step two that Plaintiff had the severe impairments of fibromyalgia, arthralgia obesity, and migraine headaches. (doc. 20-1 at 16.) Although he found that these

11

impairments did not meet or equal a listed impairment, the ALJ found that they affected Plaintiff's RFC because they limited her to sedentary work with additional exertional and nonexertional limitations. (*Id.* at 19.)  At step five, the ALJ observed that "[w]hen the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of disabled without considering the additional exertional and/or nonexertional limitations." (*Id.* at 22-23.)  Specifically using Medical-Vocational Rule 201.28[8] as a framework, he concluded that Plaintiff had the RFC "to perform the full range of sedentary work", and that her "additional limitations had little or no effect on the occupational base of unskilled sedentary work." (*Id.* at 23.)  He considered various SSRs[9] addressing Plaintiff's nonexertional limitations:

> Per SSR 96-9p postural limitations or restrictions related to climbing ladders, ropes or scaffolds, balancing, kneeling, crouching or crawling do not erode the occupational job base of sedentary unskilled work because those activities are not usually required in sedentary work. Similarly, environmental limitations like avoiding exposure to moving machinery and unprotected heights do not significantly erode the job base of sedentary work. Per SSR 85-15, "if a person can stoop occasionally (from very little to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." Additionally, SSR 85-15 states that some limitations in climbing and balancing are not significant. Furthermore, "[r]elatively few jobs in the national economy require ascending or descending ladders and scaffolding" (SSR 83-14).

(*Id.*)  Ultimately, the ALJ concluded that "a finding of 'not disabled' would be directed by

---

[8]Rule 201.28 specifically fits Plaintiff's age category, education, and past work experience. 20 F.C.R. Pt. 404 Subpt. P, App. 2, Rule 201.28.

[9]SSRs represent "statements of policy and interpretations" adopted by the Social Security Administration that are "binding on all components" of the Administration. *See* 20 C.F.R. § 402.35(b)(1). While binding on the Administration, these interpretive rulings are not binding on the courts, so courts need not give them the force and effect of law. *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977) (noting the varying degrees of deference the rulings may be afforded); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). However, courts may "rel[y] upon the rulings in evaluating ALJs' decisions." *Myers*, 238 F.3d at 620.

Medical-Vocational Rule 201.28." (*Id.*)  The ALJ did not rely on VE testimony or any other evidence.

Plaintiff argues that the ALJ erred when he exclusively relied on the Grids and SSRs, and not on expert testimony or "other similar evidence" to support his step five finding that she was able to perform available jobs in the national economy. (doc. 23 at 13-14.) As discussed, Plaintiff's fibromyalgia, arthralgia obesity, and migraine headaches are severe impairments, and her RFC included both exertional and nonexertional limitations. (doc. 20-1 at 16.)  When, as here, "the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that . . . jobs [claimant can perform] exist in the economy." *Newton*, 209 F.3d at 458.  Even though the ALJ did not expressly find that Plaintiff's nonexertional limitations[10] did not significantly affect her RFC, "[c]ourts have reasoned an impairment which so 'significantly limits' the claimant as to be determined severe at Step Two is *a priori* an impairment significantly affecting the claimant's RFC at Step Five." *Milligan v. Colvin*, No. 2:12-CV-101, 2013 WL 5345842, at *4 (N.D. Tex. Sept. 24, 2013) (citations omitted).  In *Allsbury v. Barnhart*, 460 F. Supp.2d 717 (E.D.Tex. 2006), the court found that it was "internally inconsistent" for the ALJ to determine that claimant's nonexertional limitations were not significant enough to preclude sole use of the Grids at step five when he previously found in step two that the claimant's nonexertional impairments were "severe which, by definition, means that they significantly limit plaintiff's ability to do basic work activities." *Id.* at

---

[10]Although the Commissioner contends that Plaintiff did not suffer from a nonexertional impairment (doc. 24 at 6), courts have characterized fibromyalgia and headaches as nonexertional impairments. *See Allsbury v. Barnhart*, 460 F. Supp.2d 717, 725 (E.D. Tex. 2006) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 124 (11th Cir.2004) (identifying fibromyalgia as a nonexertional impairment); *James v. Bowen*, 793 F.2d 702, 705 (5th Cir. 1986) (identifying headaches as a nonexertional ailment); *Bridges v. Comm'r of Soc. Sec. Admin.*, 278 F. Supp.2d 797, 806 (N.D. Tex. 2003) (same).

13

726; *see also Milligan*, 2013 WL 5345842, at *4 (explaining that it would be "internally inconsistent for the ALJ to find a nonexertional impairment [ ] severe at Step Two and then find, at Step Five, the Grids [ ] applicable because the claimant d[id] not have any nonexertional impairments significantly affecting the claimant's RFC").

As in *Allsbury* and *Milligan*, the ALJ in this case found at step two that Plaintiff's nonexertional limitations were severe and then based his step five findings solely on the Grids because her nonexertional limitations "ha[d] little or no effect on the occupational base of unskilled work." *See Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000); *see also Hearne v. Barnhart*, 111 F. App'x 256, 257-58 (5th Cir. 2004) (finding error where the ALJ relied solely on the Grids at step five when he found the claimant's depression to be a severe impairment under step two; explaining that "[i]n *Loza*, [the] Court linked the definition of a severe impairment at Step Two to the determination of whether a claimant's nonexertional impairments significantly affected his [RFC] such that reliance solely upon the Grid Rules at Step Five would be inappropriate"). The ALJ was therefore required to make an individualized step five determination with the assistance of VE testimony or other similar evidence. *See Wingo v. Bowen*, 852 F.2d 827, 831 (5th Cir. 1988).

The Commissioner argues that the ALJ's decision remains supported by substantial evidence because he properly relied on the applicable SSRs to determine whether Plaintiff's nonexertional limitations significantly eroded the occupational base, and "correctly applied Grid Rule 201.28 to determine[ ] that [she] was not disabled." (doc. 24 at 6-7.) She has not cited to a Fifth Circuit case in which, as here, the ALJ relied on the Grids and SSRs without obtaining VE testimony to find that sufficient jobs existed in the national economy that a claimant with various limitations could perform. In *Allen v. Barnhart*, 417 F.3d 396 (3d Cir. 2005), the Third Circuit found that "if the

14

Secretary wishes to rely on an SSR as a replacement for a vocational expert, it must be *crystal-clear* that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Id.* at 407 (emphasis added).  This view is consistent with the Fifth Circuit's approach on the consideration of VE testimony in response to a hypothetical question. *See Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000).  A hypothetical question posed by an ALJ to a VE must reasonably incorporate all the claimant's disabilities recognized by the ALJ, and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  If, in making a disability determination, the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry his burden of proof to show that despite an impairment, a claimant could perform available work. *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001).  Like the VE's hypothetical, the SSR relied upon must specifically address all the claimant's limitations when making an individualized step five determination without the assistance of VE testimony or other similar evidence. *See Allen,* 417 F.3d at 407.

Here, the ALJ relied on the Grids and SSRs 83-14, 85-15, and 96-9p to find that sedentary jobs existed in the national economy that Plaintiff could perform. (doc. 20-1 at 23.)  While the SSRs address each type of nonexertional limitation in isolation, none of them addresses the combined effects of all Plaintiff's nonexertional limitations. *See* SSR 96-9P, 1996 WL 374185, at *8 (noting that "*occasional stooping* should, *by itself*, only minimally erode the unskilled occupational base of sedentary work") (emphasis added); *Id.* at *9 ("Even a need to avoid all exposure to [moving machinery and unprotected heights] would not, *by itself*, result in a significant erosion of the [unskilled sedentary] occupational base.") (emphasis added); SSR 85-15, 1985 WL 56857, at *7

15

("Where a person has *some limitation in climbing and balancing* and it is the *only* limitation, it would not *ordinarily* have a significant impact on the broad world of work.") (emphasis added). "[W]here a claimant has both exertional and non-exertional impairments, as in the instant case, the ALJ cannot rely upon the grids alone to determine non-disability and has to either obtain testimony from a vocational expert or make 'crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work.'" *Scera nka v. Berryhill*, No. CV 3:17-1532, 2018 WL 4282782, at *4 (M.D. Pa. Sept. 7, 2018) (quoting *Allen*, 417 F.3d at 407). Any administrative notice that each nonexertional limitation is not significant is not sufficient to support a finding that Plaintiff's combined nonexertional limitations did not significantly erode the number of sedentary work available in the national economy. *See, e.g., Morel v. Colvin*, No. 4-16-CV-00476-MWB-GBC, 2017 WL 1179972, at *4 (M.D. Pa. Mar. 3, 2017), *adopted by* 2017 WL 1162946 (M.D. Pa. Mar. 29, 2017) (remanding case where ALJ relied on the Grids and SSRs without obtaining VE testimony on grounds that "none of the SSRs are 'crystal clear' about the erosion of the occupational base given the non-exertional limitations, and that reliance on the SSRs, which each address only one type of non-exertional limitation, is inappropriate when there is a wide variety of non-exertional limitations"). Even if each of Plaintiff's nonexertional limitations did not have a significant effect on sedentary work as noted in SSRs 83-14, 85-15, and 96-9p, "[i]t is well-established that an analysis must be made 'not only [of] the disabling effect of each of the [claimant's] ailments, but also the *combined effect* of all of [these] impairments.'" *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1983) (citation omitted) (emphasis added); *see Fraga*, 810 F.2d at 1305 ("The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the 'disabling effect of each of the claimant's ailments' and the '*combined effect*

16

of all these impairments.'") (citation omitted) (emphasis added). As noted, even a hypothetical question posed by an ALJ to a VE must reasonably incorporate all the claimant's disabilities recognized by the ALJ. *See Bowling*, 36 F.3d at 436. To the extent that the ALJ relied solely on the Grids and SSRs in finding that other work existed in the national economy that Plaintiff could perform, this was error.

Because the ALJ did not rely on VE testimony or other similar evidence in making his step five determination that Plaintiff could perform other work in the national economy, his decision was not based on substantial evidence. *See Wingo*, 852 F.2d at 831 n.4.

**B.**     **Harmless Error**

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected....The major policy underlying the harmless error rule is to preserve judgments and to avoid waste of time." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (per curiam). "[P]rocedural improprieties...will therefore constitute a basis for remand *only if* such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (emphasis added); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). The ALJ's error is harmless if the substantial rights of a party have not been affected. *See Alexander*, 412 F. App'x at 722. Whether the ALJ's error in failing to rely on VE testimony or other similar evidence at step five was harmless must therefore be considered. *See January v. Astrue*, 400 F. App'x 929, 931-32 (5th Cir. 2010) (applying harmless error analysis when the court ruled that the ALJ's reliance on the Grids before determining the claimant's restrictions significantly compromised the claimant's

17

capacity to perform light work was an error).

Here, the ALJ considered the medical evidence and specifically found that Plaintiff could "lift and carry 10 pounds occasionally, less than 10 pounds frequently, stand and/or walk two hours of an eight-hour workday, sit for six hours of an eight-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel and crouch, never climb ladders, ropes or scaffolds due to fatigue and joint stiffness," and that "she must avoid exposure to hazardous moving machinery and unprotected heights due to migraine headaches and medication side effects such as drowsiness as well as fatigue and brain fog related to the fibromyalgia." (doc. 20-1 at 20.) Because he relied solely on the Grids in making his step five determination, there is no evidence that Plaintiff's limitations were incorporated into the jobs she could perform. The ALJ's determination that she could perform other work, made without consulting a VE or other similar evidence, therefore affected Plaintiff's substantial rights. The error is not harmless, and remand is warranted. *See Sheila R. J. v. Saul*, No. 6:19-CV-00053-H-BU, 2021 WL 769713, at *7 (N.D. Tex. Feb. 1, 2021), *adopted sub nom. by* 2021 WL 765030 (N.D. Tex. Feb. 26, 2021) (finding reversible error where ALJ had determined that the claimant had severe nonexertional mental impairments and failed to consult a VE or other evidence and relied solely on the Grids at step five).

## IV.  CONCLUSION

The Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings.

**SO ORDERED**, on this 12th day of September, 2022.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE